# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| B.P.S., LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 5:19-CV-06154-FJG |
| v. ) | |
| ) | |
| COVINGTON SPECIALTY ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | **JURY TRIAL DEMANDED** |
| ) | |

## DEFENDANT COVINGTON SPECIALTY INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO PARTIALLY EXCLUDE THE EXPERT OPINIONS OF LEWIS SCOTT GANN

COMES NOW, Defendant Covington Specialty Insurance Company ("Covington"), by and through the undersigned counsel, pursuant to *Daubert v. Merrell Dow Pharm.*, 509 U.S. 5779 (1993) ("*Daubert*") and Federal Rule of Evidence 702 (Fed. R. Evid. 702), and for its Memorandum in Support of its Motion to Partially Exclude the Expert Opinions of Lewis Scott Gann, states the following:

## FACTS

Covington and Plaintiff entered into an agreement wherein Covington provided insurance for covered causes of loss under a Policy No. VBA67687700, with effective dates of February 9, 2019 through February 9, 2020. (Doc 1, Exhibit 1). Plaintiff alleges in its Petition that on April 9, 2019, a portion of the roof of the covered premises collapsed. *Id.*. Plaintiff made a claim under the policy,

Covington retained engineer Kent Higgins of Rimkus Engineering to investigate the loss. (See Exhibit A, Report Of Kent Higgins). (Doc #4). Mr. Higgins determined that the damage was

1

due to repetitive moisture intrusions that occurred as a result of long-term wear and tear, deterioration, decay, and an improper maintenance schedule of the roof covering. *Id*. In support of his findings, Mr. Higgins provided a written report detailing his findings and including pictures of the partial collapse. (Id. at p. 2 and 9-10, photographs begin on p. 16, Rimkus Report attached as Exhibit A). Covington ultimately denied Plaintiff's claim based on Mr. Higgin's findings. (Doc 4).

Plaintiff filed the Petition in this matter on October 4, 2019, alleging one count of breach of contract against Covington for failing to pay Plaintiff's claim, alleging that the claim should be covered under the insurance policy as wind damage. (Doc #1-1). Plaintiff additionally alleged one claim of vexatious refusal against Covington for failing to Plaintiff's claimed damages. *Id*. Plaintiff is asserting the loss was caused by wind event, which should be covered under the policy of insurance. *Id*.

In support of Plaintiff's claims, it has identified two experts: Michael Falbe, P.E. an engineer, on the cause of the collapse and Lewis Scott Gann, a general contractor , on the cause of the collapse, the scope and amount of repairs to the building[1]. (Doc #21). Additionally, Plaintiff originally designated Steven Roberts, owner of a roofing company, as an expert testifying to his opinion on the causation of the partial roof loss but withdrew him as an expert immediately prior to his deposition. *Id.*

## ARGUMENT

The admissibility of expert testimony in a civil case is governed by Fed. R. Evid. 702, which permits expert testimony by a qualified witness if:

---

[1] Mr. Gann's opinions regarding the scope and amount of repairs to the building are not at issue in this Motion. This Motion is solely regarding Mr. Gann's opinions regarding the cause of loss.

(a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) The testimony is based on sufficient facts or data;

(c) The testimony is the product of reliable principles and methods; and

(d) The expert has reliably applied the principles and methods to the facts of the case.

The Court's role in determining the admissibility of expert testimony is that of a gatekeeper. *General Electric Co. v. Joiner*, 522 U.S. 136, 142 (1997); *see also Daubert*, 509 U.S. at 597. The Eighth Circuit has condensed the task of the Court's gatekeeper function to a three-part screening test to determine: (1) whether the expert is qualified, (2) whether the testimony is relevant, and (3) whether the testimony is reliable. *Polski v. Quigley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008) (*citing Lauzon v. Senco Prods.*, 270 F.3d 681, 686 (8th Cir. 2001). To prove that expert testimony is reliable, the party offering it must show that it is based on sufficient facts or data, and reliable principles and methods were applied; essentially, the party offering the testimony must show that the method used by the expert in reaching the conclusion is scientifically sound. *See Junk v. Terminix Int'l Co.*, 628 F.3d 439, 448 (8th Cir. 2010); *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003); *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999). If expert testimony is not reliable, it is inadmissible. Fed. R. Evid. 702.

The United States Supreme Court in *Daubert* and its progeny have identified a non-exhaustive list of factors that trial courts may consider when determining the reliability of the proffered expert: (1) whether the theory can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) general acceptance in the scientific community. *Daubert*, 509 U.S. at 593-94. The Supreme Court has

3

Case 5:19-cv-06154-FJG   Document 42   Filed 07/22/20   Page 3 of 12

emphasized, however, that these four factors are not a "definitive checklist or test" and that a court's gatekeeping inquiry into reliability must be "tied to the facts of a particular case."

> [C]onclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion offered. *General Electric Co.* v. *Joiner*, 522 U.S. at 146 (applying the analogous Fed. R. Evid. 702).

Therefore, a Court should consider not only the conclusions of the expert, but also the principles and methodology employed by the expert. *See* Fed. R. Evid. 702.

Admissible scientific principles and methodology are based on generating hypotheses and testing them to see if they can be falsified. *Daubert*, 509 U.S. at 593. "[S]cientists whose conviction about the ultimate conclusion of their research is so firm that they are willing to aver under oath that it is correct prior to performing the necessary validating tests [may] properly be viewed by the district court as lacking the objectivity that is the hallmark of the scientific method." *Mitchell*, 165 F.3d at 783 (internal citation omitted).

**I. The Proponent Of Expert Testimony Bears The Burden To Prove Admissibility Under *Daubert*.**

The party seeking to admit expert testimony bears the burden of proving admissibility. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006). A party seeking to admit expert testimony must show a grounding in the methods and procedures of science which must be based on actual knowledge and not mere subjective belief, unsupported speculation, or conjecture. *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010); *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 448 (8th Cir. 2010). When a party's expert presents testimony that amounts to nothing more than guesswork or conjecture, his testimony is inadmissible. *Id.*

4

As outlined further below, Plaintiff cannot meet his burden showing that Mr. Gann's expert opinion is reliable and relevant or extends beyond mere conjecture or guesswork as required by Fed. R. Evid. 702 to be properly admissible. In fact, Mr. Gann admitted during his deposition that he is a lay person and he has no specialized training to evaluate wind damage. (Gann Dep. at 23:21-25, 24:21-25, attached as **Exhibit B**).

**II.     Mr. Gann's Causation Opinion Does Not Meet The Requirements Of Fed. R. Evid. 702.**

"Well, it didn't look like a missile hit it, so I figured it had to be a weather event like wind." (Exh. B at p. 19:3-5). This statement by Mr. Gann is one example of the complete lack of scientific methodology, principles, and credentials underlying his "expert" opinion. As outlined further below, Mr. Gann is not qualified to give an expert opinion regarding causation in this case and his opinions are not based on reliable methods or scientific principles.

An expert opinion cannot be a foregone conclusion, it must be based on the expert's knowledge or experience, based on sufficient facts and data, and utilize reliable principles and methods. *See* Fed. R. Evid. 702. Mr. Gann's causation opinion does not meet any of the standards of permitted expert testimony under Fed. R. Evid. 702. As such, Mr. Gann's opinion regarding the causation should be struck.

**A.     Mr. Gann Lacks the Technical or Specialized Knowledge to Assist the Jury on the Issue of Causation**

To qualify as an expert under Fed. R. Evid. 702, the expert must possess "scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue." Mr. Gann has a high school education and has no specialized training in engineering and does not hold himself out as an expert in engineering. (Exh. B. at p. 7:25-8:6, 11:11-19). He is a general contractor that does not even specialize in roofs. Id.

5

Mr. Gann relied solely on his experience as a general contractor while formulating his opinions on causation (Exh B. at p. 65:17-21).

Further, Mr. Gann readily testifies that he seeks out qualified experts, including engineers, when necessary to evaluate a building issue. (Exh. B at p. 7:3-7, 7:19-24). In fact, in this case, Mr. Gann even requested that an engineer be brought in: "I asked that we bring an engineer in, and he was the expert. I was just the builder." (Exh. B. at p. 7:3-5). Notably, BPS has a retained engineer in this case, Mike Falbe, whose opinions are not subject to this Motion. (Doc. #21). Further, Mr. Gann admitted that he was not initially retained for the purpose of determining the cause of the partial collapse, but as a builder. (Exh. B. at p. 7:5). Mr. Gann took no measurements, completed no testing, and only examined the building in order to repair it. (Exh. B. at p. 7:3-5, 12:17-24, 14:11-15, 40:18-20, *see generally* Exh. B.).

While Fed. R. Evid. 702 does not require an advanced degree in order to testify as an expert, it does require that the expert demonstrate a substantive qualification in order to testify as an expert. *Arnold v. Amada N. Am., Inc.*, No. 4:07CV198 RWS, 2008 U.S. Dist. LEXIS 60434, at *10 (E.D. Mo. Aug. 8, 2008).

In *Arnold*, the court rightfully excluded an expert despite acknowledging that he was "an impressive researcher, academic, and engineer." *Arnold* at 10. In that case, the proposed expert demonstrated in his deposition that while he was an academically qualified expert in general, the proposed expert lacked any expertise in the subject matter at issue. *Id.* at 10-11. During his deposition he additionally admitted that he had no practical experience with the brake machine at issue, he knew practically nothing about the machine at issue, he spoke with no witnesses, took no measurements, did not know basic information relevant to the case, and he had not completed academic research in that area. *Id.* The Court excluded the expert because the proponent failed to

6

Case 5:19-cv-06154-FJG   Document 42   Filed 07/22/20   Page 6 of 12

establish that the expert had any specific expertise that would be of assistance to the jury. *Id.* at 11-12.

In the current case, Mr. Gann does not have any specialized training or education regarding wind losses or engineering. (Exh B. at p. 7:25-8:6, 11:11-19). While he is qualified as a contractor, he has no forensic engineering background or other specialized knowledge that would allow him to opine on causation. Similar to *Arnold*, he has tangential experience that may be interesting, but that does not make him an expert on what he has been disclosed to testify on –the cause of a partial roof collapse allegedly due to wind. As with the expert in *Arnold,* here Mr. Gann does not have the requisite specialized knowledge to be of any assistance to a jury on this issue.

**B. Mr. Gann Did Not Base His Opinions On Sufficient Facts or Data**.

Mr. Gann's opinion is fundamentally unsupported and must be excluded. Fed. R. Evid. 702 requires that offered expert testimony be based on sufficient facts or data.. A district court is not required to "admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 137. "If the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury, it must be excluded." *McMahon v. Robert Bosch Tool Corp.*, No. 4:18-cv-00583 SRC, 2019 U.S. Dist. LEXIS 191666, at *11 (E.D. Mo. Nov. 5, 2019) (quoted case omitted).

Mr. Gann fails to cite any actual data or facts upon which he bases his opinion. Mr. Gann opines that the collapse was due to "a weather event like wind." (Exh B. at p. 19:3-5). However, during his deposition, he was unable to support his opinions with even the bare minimum facts and data and could not even state the date on which the alleged loss occurred. Mr. Gann testified that in forming his opinions he did not review any wind data or narrow down what type of wind even occurred, as it "doesn't make a difference to me. I mean, you know, again I'm here to fix

7

it." (Exh B. at p. 18:9-15). Additionally, he did not investigate the damaged wood support column, a significant piece of the roof collapse. (Exh. B. at p. 37:23-38:7). Nor did Mr. Gann review any other documents and did not perform any scientific testing or inspections in order to support his opinion. (Exh B. at p. at 7:16-18, 12:17-24, 14:11-15, 18: 9-15, 34:17-36:19, 40:18-20, 65:17-21). Furthermore, Mr. Gann based part of his opinion on his assumption that that fasteners in the roof gave way but failed to make even a cursory inspection to investigate this hypothesis or even confirm the fasteners were indeed nails. (Exh B. at p. 41:5-42:5). In the end, Mr. Gann did not even sufficiently inspect the building for the cause of the partial collapse; he merely inspected it for the purpose of affecting repairs. (Exh. B. at p. 41:15-23).

Ultimately, Mr. Gann bases his opinion not on any facts or data, but on mere conjecture. This is wholly insufficient to satisfy *Daubert*.

### C. Mr. Gann Failed To Use Reliable Principles And Methods To Establish A Causal Relationship Between Alleged Wind Event(s) And The Partial Roof Collapse.

The overall subject of Fed. R. Evid. 702 and its requirements are to evaluate the scientific validity of the principles that underlie proposed expert testimony. *Daubert* at 594. Fed. R. Evid. 702 requires that an expert apply reliable principles and methods in order to justify his or her opinion. *Arnold* at 5-6.

As mentioned above, the *Daubert* Court provided four factors that trial courts can use to determine the reliability of a scientific expert opinion: (1) whether the theory can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error; and the (4) general acceptance in the scientific community. *Daubert*, 509 U.S. at 593-94.

While these four factors are non-exhaustive, Mr. Gann's opinion plainly does not meet the criteria envisioned by the *Daubert* Court. Mr. Gann's opinion is based purely on his speculation. (Exh B. at p. 65:17-21, *see generally* Exh. B.). Mr. Gann did not perform any scientific testing at all and did not even purposefully inspect the property other than what he observed during the repairs of the warehouse. (Exh B. at p. 12:17-24, 36:11-13, 40:18-20, *see generally* Exh. B.). No peer-reviewed studies, or any publications, were cited by Mr. Gann in support of his opinion. (Exh B. at p. 65:17-21, *see generally* Exh. B.). He performed no scientific or repeatable testing nor allowed his theory to be scrutinized by the scientific community. (Exh B. at p. 12:17-24, 36:11-13, 40:18-20).

Mr. Gann did not rely on any recognizable, scientific methodology in order to conclude that the loss was due to wind. In fact, when asked about his methodology, Mr. Gann stated:

> Q: Okay. Do you have any sort of methodology when you're asked to figure out the cause of something or anything like that?
> A: You know, I just draw from my years of experience and background of working on job sites. When you say methodology, I mean obviously we look at, you know, what the problem is and what it's going to take for repair it.
> (Gann Dep. at 12:17-24)

This "methodology" is clearly not scientific or reliable as contemplated by *Daubert* and Fed. R. Evid. 702. It also goes to what needs to *repaired*, not what caused the loss.

Using this methodology, Mr. Gann seemingly could not eliminate any potential cause of the collapse, save perhaps a "missile." (Exh B. at p. 19:1-5). Not only could Mr. Gann not sufficiently explain how the alleged wind event could cause the loss, when the wind event happened, or how many wind events may have occurred, he could not even determine if a tornado was the cause of the damage (Exh B. at p. 21:10-16, 22:25-23:6, 25:1-12, 41:1-14). Mr. Gann could not determine if the alleged wind event that caused the loss was due to wind from the inside or outside of the building. (Exh B. at p. 43:24-44:4).

9

Mr. Gann could also not sufficiently explain how the mechanics of wind caused the loss, which is the claimed cause in his expert opinion regarding causation, beyond statements such as "It could be numbers of way the wind hit." (Exh B. at p. 41:1-44:4, quoted portion at 43:17-18) He additionally did not make further inspections to confirm or deny his unfounded hypothesis (Exh. B. at p. 41:15-18).

When asked how the wind caused the partial roof collapse, Mr. Gann responded:

> Q: In this particular case, what happened?
> A: I wasn't there when it failed, *so I can't tell you,* but I'm going to say it's obviously, I felt like, the roof deck itself shifted. (Exh. B. at p. 46:17-22). (emphasis added)

Mr. Gann could not rule out any potential causes, because he did not perform any substantive investigation as to causes beyond his own pre-determined assumption about a potential wind event. Mr. Gann did not employ *any* recognized methodology to assess a specific cause for the partial roof collapse. His opinion is based on result-oriented speculation. Mr. Gann's lack of investigation and faulty methods cannot satisfy the stringent reliability requirements of *Daubert*, and any causation opinion offered by Mr. Gann must be excluded.

### D. Mr. Gann Did Not Apply Any Recognized Methodology Or Scientific Principles To The Current Case.

Fed. R. Evid. 702 requires that the proposed expert reliably applied the principles and methods to the facts of the case. As shown above, Mr. Gann did not base his opinion on anything other than pure speculation. (Exh B. at p. 65:17-21, *see generally* Exh. B.). Mr. Gann did not apply any scientific, testable, or reproduceable methodology or principles to those facts. (Exh B. at p. 12:17-24, 36:11-13, 40:18-20, *see generally* Exh. B.). While the *Daubert* standards can be flexible in admitting various methods, they don't extend to situations where the only basis for the opinion is the *ipse dixit* of the expert. *McMahon v. Robert Bosch Tool Corp.* at 16.

10

It is impossible for Mr. Gann's opinions to satisfy this requirement of Fed. R. Evid. 702 as he based his opinion on no underlying facts, he used no scientific methodology or principles, and based his opinion purely on his own speculations. Therefore, any causation opinion offered by Mr. Gann must be excluded.

## CONCLUSION

For the foregoing reasons, Covington requests the Court issue an Order excluding the expert opinion and testimony of Lewis Scott Gann for failing to meet the requirements of Fed. R. Evid. 702.

Respectfully submitted,

**KNIGHT NICASTRO MACKAY, LLC**

*/s/Jonathan B. Morrow*
Jonathan B. Morrow, #58661
jmorrow@knightnicastro.com
4240 Duncan Avenue
St. Louis, Missouri 63110
(314) 649-5234 Telephone
(816) 396-6233 Facsimile
***Attorney for Defendant***

## CERTIFICATE OF SERVICE

A true and accurate copy of the foregoing was filed electronically with the Clerk of Court, to be served by operation of the Court's electronic filing system, this 22nd day of July, 2020 to:

R. Todd Ehlert, #51853
700 S. Riverside Road, Ste. 200
St. Joseph, MO 64507
Tehlert@rousepc.com
*Attorneys for Plaintiff*

*/s/Jonathan B. Morrow*

12