IN THE UNITED STATS DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| B.P.S., LLC, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 5:19-CV-06154-FJG |
| COVINGTON SPECIALTY INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

### PLAINTIFF B.P.S., LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANT COVINGTON SPECIALTY INSURANCE COMPANY'S MOTION TO PARTIALLY EXCLUDE THE EXPERT OPINIONS OF LEWIS SCOTT GANN

Defendant Covington Specialty Insurance Company ("**Defendant**") has filed a Motion to Partially Exclude the Expert Opinions of Lewis Scott Gann (the Defendant's "**Motion**") on the basis that Mr. Gann's testimony is not "scientifically sound." Defendant's Motion should be denied. Defendant presents Mr. Gann's testimony out of context to give the illusion that he is unqualified, his methods are unsound, and his opinions are not based on sufficient facts or data. As recognized by three other witnesses in this case, including Defendant's corporate representative, the determination of the cause of a roof collapse does not always require an engineering education. Thus, the determination does not always require the employment of "scientific" principles and methods. Mr. Gann is qualified as an expert by his knowledge, skill, experience, training, and education gained over thirty-five years in the construction industry, and his causation opinion is based on his investigation and repair of the roof in question, which includes compelling photographs of wind uplift. As further explained below, Mr. Gann is qualified as an expert, and his testimony meets the requirements of Federal Rule of Evidence 702(a)-(d) ("**Rule 702**") such that it is admissible. Accordingly, Defendant's Motion should be denied.

1

## Introduction

This case arises out of a partial roof collapse at a commercial property owned by Plaintiff B.P.S., LLC ("**Plaintiff**") and covered under a policy of insurance issued by Defendant. (DOC 1, Exhibit A, Petition at ¶¶ 9-23). After the roof collapsed, Plaintiff submitted a claim to Defendant under the commercial property coverage terms of the policy, claiming the loss was caused by a windstorm. *Id*. Defendant thereafter denied coverage. *Id*. On October 4, 2019, Plaintiff filed a lawsuit in the Associate Division of the Circuit Court of Buchanan County, Missouri. *Id*. On November 8, 2019, Defendant removed the lawsuit to this Court. *Id*.

On May 4, 2019, pursuant to Federal Rule of Civil Procedure 26(a)(2)(C), Plaintiff identified Scott Gann as an expert witness who would not provide a written report. (DOC 21). Plaintiff specified that "Mr. Gann is the owner of Scott Gann Construction" and "a licensed general contractor who will testify regarding his inspection, demolition and repair of the BPS building where the partial roof loss occurred, as well as to the cause of that loss." *Id*. And that Mr. Gann "prepared proposals for the repair work to the building dated June 3 and October 3, 2019" and "performed and completed the work per his October 3 proposal." *Id*. Mr. Gann's opinion is "that the partial roof loss was caused by uplift from wind and is supported by his training and experience as a general contractor; by his inspection of the building where the loss occurred (including taking photos of the roof showing uplift); and by his demolition and repairs to the building." *Id*.

On June 3, 2020, Defendant took Mr. Gann's deposition, and thereafter on July 22, 2020, Defendant filed this Motion in which it seeks to exclude Mr. Gann's causation opinion. (DOC 41). The Motion is based on the unfounded assertion that Mr. Gann's causation opinion is not sufficiently scientific and that "he has no specialized training to evaluate wind damage." *Id*. at pp. 3, 5. For the reasons discussed in this memorandum, the Motion should be denied.

**Argument**

"[T]he Rules of Evidence . . . assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; . . . the testimony is based on sufficient facts or data; . . . the testimony is the product of reliable principles and methods; and . . . the expert has reliably applied the principles and methods to the facts of the case." Rule 702. "'Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony'" and, thus, is a rule "'of admissibility rather than exclusion.'" *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (citations omitted).

**I.  Mr. Gann's causation opinion is admissible under Rule 702.**

Boiled down, "proposed expert testimony must meet three prerequisites in order to be admitted under Rule 702." *Lauzon*, 270 F.3d at 686. "First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact." *Jet Midwest Int'l Co., Ltd. v. Jet Midwest Group, LLC*, No. 5:18-cv-06019-FJG, 2019 WL 8333450, *3 (W.D. Mo. November 6, 2019) (*quoting Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 561 (8th Cir. 2014)).  "This is the basic rule of relevancy."  *Id*.  "Second, the proposed witness must be qualified to assist the finder of fact."  *Id*.  And "[t]hird, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires[.]"  *Id*.

Mr. Gann's testimony meets each of those requirements—it is based on his specialized experience and knowledge as a general contractor; it will help the trier of fact determine the issue of causation; he is qualified based on his experience and knowledge gained during his thirty-five year career as a general contractor; and it is reliable because it is based on his investigation and repair of the roof in question. Thus, the Court should deny Defendant's Motion.

> **A. Mr. Gann's causation opinion is based on technical and specialized knowledge and will be useful to the finder of fact in determining the issue of causation.**

Defendant contends that "Mr. Gann . . . has no specialized training in engineering and does not hold himself out as an expert in engineering." (DOC 42, p. 5). Thus, Defendant argues that Mr. Gann's opinion is not based on any specialized knowledge or training. Defendant ignores Mr. Gann's testimony directly relating to his technical and specialized knowledge.

Mr. Gann's technical and specialized knowledge comes from having been a general contractor for the past thirty-five years. (*See* Deposition of Lewis Scott Gann, 8:4-8, attached as **Exhibit 1**). While Mr. Gann readily acknowledged that he does not hold himself out as an engineering expert, he testified at his deposition that he is "an expert in structural framing." (Gann Deposition, **Exhibit 1**, 11:18-19). He also stated that he had been evaluating wind-related structural damage his "whole career." (Gann Deposition, **Exhibit 1**, 20:5-13). Additionally, Mr. Gann's technical and specialized knowledge relating to wood-framed structures and wind damage is shown throughout his discussions of those topics at his deposition. For example, when asked about "the mechanics" of how the roof falling in was caused by wind, he explained,

> . . . it's the physics of it. So if the wind picks something up and it disjoints it from its fasteners, it's free to go wherever it wishes. By that, once that bond is broken between the actual mechanical fasteners, that's when there's nothing there to support it at that point. That's what's holding it together. So at that time if you have wind pressure in the building or out of the building, it can make that thing [the roof] do whatever it decides to do.

4

(Gann Deposition, **Exhibit 1,** 40:23 – 41:14). He further discussed that "wind shifts framing by pressure" which could include "[p]ressure on the side wall, pressure on the roof deck, uplift pressure, side to side." (Gann Deposition, **Exhibit 1,** 46:9-15). The examples throughout Mr. Gann's deposition are numerous and all lead to the conclusion that Mr. Gann's testimony is based on his technical and specialized knowledge as a general contractor. (*See* Gann Deposition, **Exhibit 1**, 27:12-14; 38:18-24; 39:22 – 40:2; 42:18-19; 42:24 – 43:13). Accordingly, the next question is whether the testimony will assist the trier of fact. It will.

An "expert's opinion . . . should be excluded only when it is 'so fundamentally unreliable that it can offer no assistance to the jury.'" *Filbert v. Joseph T. Ryerson & Son, Inc.*, No. 4:10CV1189 JCH, 2012 WL 2154347 (E.D.Mo. June 12, 2012) (*quoting Harrington v. Sunbeam Products, Inc.*, No. 4:07-CV-1957, 2009 WL 701994 at *4 (E.D.Mo. March 13, 2009)). Thus, "'doubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility.'" *Sphere Drake Ins. PLC v. Trisko*, 226 F.3d 951, 954 (8th Cir. 2000) (*quoting Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998)).

Here, however, there can be no doubt that Mr. Gann's testimony will be useful to the finder of fact in determining the issue of causation. *See Martin v. Crown Equipment Corp.*, No. 05-3407-CV-S-GAF, 2008 WL 11337826 (W.D.Mo. January 16, 2008) (expert testimony on causation is appropriate when complex claims beyond the knowledge of lay jurors are involved). Ordinary lay jurors are unlikely to understand the mechanics of construction, framing, fasteners and the application of wind uplift to same. Mr. Gann's testimony is based on his technical and specialized knowledge and will be useful to the finder of fact in determining what caused the damage to the roof—the central issue in this case.

5

For those reasons, the Court should find that the first requirement for admissibility under Rule 702 has been met.

> **B.     Mr. Gann is qualified to assist the finder of fact based on his extensive training and experience in the construction industry.**

Again, Defendant asserts that "Mr. Gann has a high school education and has no specialized training in engineering and does not hold himself out as an expert in engineering." (DOC 42, p. 5). Furthermore, Defendant attempts to hold Mr. Gann's opinion to some arbitrary "scientific" standard that does not apply to his opinion. Defendant unduly relies on the discussion of scientific principles and methodology in *Daubert*. *See Daubert*, 509 U.S. at 597 (determining what were the "necessary precondition(s) to the admissibility of *scientific* evidence under the Federal Rules of Evidence[.]") (emphasis added). Defendant's arguments fail.

Experts may be properly "qualified by knowledge, skill, and practical experience in construction and the construction industry to testify" on a given subject, and "[a]lthough their testimony might be more persuasive if they possessed academic credentials, their lack of degrees does not make them ineligible to testify, particularly in the context of . . . a construction dispute." *Weitz Company, LLC v. MH Washington, LLC*, No. 06-0559-CV-W-DGK, 2008 WL 11338057, *19 (W.D. Mo. August 19, 2008). "Rule 702 'does not rank academic training over demonstrated practical experience.'" *Fox v. Dannenberg*, 906 F.2d 1253, 1256 (8th Cir. 1990) (*quoting Circle J Dairy, Inc. v. A.O. Smith Harvestore Products, Inc.*, 790 F.2d 694, 700 (8th Cir. 1986)).

Thus, while "[e]ngineering testimony rests upon scientific foundations, the reliability of which will be at issue in some cases[,] . . . [i]n other cases, the relevant reliability concerns may focus upon personal knowledge or experience." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *see also Weitz Company, LLC*, 2008 WL 11338057, at *19 (non-retained experts had sufficient personal knowledge and as "[a]pplied to the present

6

case, the rule does not require a proposed expert have a structural engineering degree or license to offer testimony about . . . allegedly defective steel."). Thus, it is self-evident "that 'an individual can qualify as an expert where he possesses sufficient knowledge gained from practical experience, even though he may lack academic qualifications in the particular field of expertise.'" *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 283 (8th Cir. 1995) (*quoting Fox*, 906 F.2d at 1256).

Mr. Gann is qualified as an expert by the training and experience he has gained as a general contractor and owner of a construction business for over thirty-five years. (Gann Deposition, **Exhibit 1,** 8:4-8). Mr. Gann's business does "a lot of light commercial projects [with] emphasis in structural framing[.]" (Gann Deposition, **Exhibit 1,** 8:11-24). Mr. Gann has installed "[l]ots of roofs" in his career. (Gann Deposition, **Exhibit 1**, 44:20-24). And, as mentioned before, Mr. Gann has been evaluating wind-related structural damage his "whole career." (Gann Deposition, **Exhibit 1**, 20:5-13). Mr. Gann also noted that "[i]f it's wood frame, that's really [his] wheelhouse." (Gann Deposition, **Exhibit 1**, 8:25 – 9:1). Here, the framing at issue beneath the part of the roof that failed was constructed of wood. (*See* Deposition of Michael Falbe, 56:9-19, attached as **Exhibit 2**). Thus, the construction and mechanics of this wood-framed roof are in Mr. Gann's "wheelhouse."

Moreover, Defendant's own corporate representative testified that he did not believe it takes an engineer to determine the cause of every roof loss. (*See* Excerpt of Deposition of Dan Durbin, Defendant's Corporate Representative, 3:13-15, attached as **Exhibit 3**). Defendant's retained claims adjuster, Broc Beaver, also acknowledged that he did not "believe that it takes an engineer to determine the cause of every roof collapse[.]" (*See* Deposition of Broc Beaver, 53:1-3, attached as **Exhibit 4**). Plaintiff's expert, a licensed structural engineer, also acknowledged that

7

it does not always take an engineer to figure out what causes a roof collapse in every case, and that it would not necessarily take an engineer to determine the cause of the collapse at issue in this case. (Falbe Deposition, **Exhibit 2**, 21:4-8). Furthermore, as discussed in the following subsection, Mr. Gann made a full and thorough investigation of the damage and based his opinion on a sufficient and trustworthy methodology.

Defendant is essentially arguing that Mr. Gann should be precluded from testifying because he is not an engineer. Such a formal education is not required by Rule 702 or relevant case law interpreting the rule. Mr. Gann is qualified to assist the finder of fact by his practical training and experience gained over his thirty-five years in the construction industry.

      **C.**    **Mr. Gann's causation opinion is reliable in that it is based on his personal knowledge, investigation, and repair of the roof at issue in this case.**

Defendant argues that "Mr. Gann's opinion is fundamentally unsupported and must be excluded." (DOC 42, p. 7). Defendant asserts that Mr. Gann did not "review any . . . documents and did not perform any scientific testing or inspections in order to support his opinion." (DOC 42, p. 8). Defendant also argues that Mr. Gann's opinion is not reliable because "Mr. Gann did not rely on any recognizable, scientific methodology in order to conclude that the loss was due to wind." (DOC 42, p. 9). In support of that argument, Defendant takes Mr. Gann's deposition testimony out of context and asserts that "[u]sing [his] methodology, Mr. Gann seemingly could not eliminate any potential cause of collapse, save perhaps a 'missile.'" (DOC 42, p. 9).

First, as established before, Defendant's attempts to couch Mr. Gann's opinion as strictly "scientific" should be rejected. "Rule 702 does not distinguish between 'scientific' knowledge and 'technical' or 'other specialized' knowledge, but makes clear that any such knowledge might become the subject of expert testimony." *Kumho Tire Co., Ltd.*, 526 U.S. at 138, Syl. ¶ 1.(a). "It

8

is the Rule's word 'knowledge,' not the words (like 'scientific') that modify that word, that establishes a standard of evidentiary reliability." *Id*. "*Daubert* referred only to 'scientific' knowledge because that was the nature of the expertise there at issue." *Id*. Mr. Gann's "knowledge" is technical and specialized based on his personal experience in the construction industry. Thus, Defendant's effort to judge his opinion through a scientific lens is improper and a misapplication of *Daubert*.

Next, Defendant latches onto what it views as an inflammatory bit of deposition testimony relating to a "missile." When viewed in its full context, the Court will see that Mr. Gann's testimony relating to a missile was a tongue-in-cheek remark relating to whether or not anyone told him there had been a storm causing the roof damage. Mr. Gann was asked, "[w]ere you told that it was a storm by anyone?" He replied "[w]ell, it didn't look like a missile hit it, so I figured it had to be a weather event like wind." (Gann Deposition, **Exhibit 1**, 19:1-5). Mr. Gann, throughout his deposition, goes on to explain his opinion that the damage to the roof was caused by wind. Almost immediately after the "missile" comment, he clarified, ". . . I don't recall anybody telling me it was weather related, but it looks to me like it was weather related . . ." (Gann Deposition, **Exhibit 1**, 19:21-23). He further clarified that he believed it was "[w]ind related." (Gann Deposition, **Exhibit 1**, 20:4). That Defendant would rely so heavily on such an obvious tongue-in-cheek response shows the weaknesses in Defendant's Motion.

Finally, evaluated on its own, it is clear that Mr. Gann's causation opinion is the result of reliable methods and principles. Mr. Gann personally observed the damage to the roof when he made his visual inspection of the property. (Gann Deposition, **Exhibit 1**, 17:14-20; 25:10-12; 32:21-25). He also took photographs of the damage, which he discussed at his deposition. (Gann Deposition, **Exhibit 1**, 26:4-6; Photographs of Roof, attached hereto as **Exhibit 5**). The

photographs show the "uplift" that Mr. Gann described at his deposition. (Photographs of Roof, **Exhibit** 5; Gann Deposition, **Exhibit 1**, 43:7; 46:15; 55:5-12). Mr. Gann also drew up plans for the repair of the roof for approval by the city, which demonstrate that his investigation and diagnosis of the damage was the result of a trustworthy methodology. (*See* Repair Drawing Diagram, attached as **Exhibit 6**). Mr. Gann summed up his methodology simply, "I just draw from my years of experience and background working on job sites. When you say methodology, I mean obviously we look at, you know, what the problem is and what it's going to take to repair it." (Gann Deposition, **Exhibit 1**, 12:20-24).

Mr. Gann's causation opinion is reliable. It is based on his personal observation, investigation, and repair of the roof in question. Accordingly, the opinion is admissible, and Defendant's Motion should be denied.

### II. Defendant's arguments all go to the weight to be accorded to Mr. Gann's testimony at trial, not its admissibility.

"'Once the trial court has determined that a witness is competent to testify as an expert, challenges to the expert's skill or knowledge go to the weight to be accorded the expert testimony rather than to its admissibility.'" *Sylla-Sawdon*, 47 F.3d at 283 (*quoting Fox*, 906 F.2d at 1256); *see also Filbert*, 2012 WL 21543147, at *3 (A"[d]efendant's assertions concerning flaws in [the expert's] methodology or underlying assumptions are proper subjects for [the defendant's] own expert testimony and for thorough cross-examination before the trier of fact."); *Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1183 (8th Cir. 1997) ("'[T]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.'") (citation omitted).

10

Case 5:19-cv-06154-FJG   Document 44   Filed 08/05/20   Page 10 of 12

As established herein, Mr. Gann is qualified to testify as an expert by his extensive training and experience gained during his thirty-five-year construction career; his testimony will aid the finder of fact in determining the issue of causation; and his opinion is based on reliable facts and data. Thus, Defendant's arguments in the Motion go to the weight to be accorded Mr. Gann's testimony rather than its admissibility, and the Motion should be denied.

## Conclusion

For the reasons stated herein, Plaintiff B.P.S., LLC respectfully requests that Defendant Covington Specialty Insurance Company's Motion to Partially Exclude the Expert Opinions of Lewis Scott Gann be denied.

**Respectfully Submitted,**

**ROUSE FRETS WHITE GOSS GENTILE RHODES, P.C.**

/s/ *R. Todd Ehlert*
R. TODD EHLERT – MO # 51853
tehlert@rousepc.com
700 S. Riverside Road, Suite 200
St. Joseph, MO 64507
Telephone: (816) 609-8751
Facsimile: (913) 928-6739

**Attorney for Plaintiff**

## CERTIFICATE OF SERVICE

      I certify that on the 5th day of August, 2020, a copy of the foregoing was filed via the Court's electronic filing system, and under Local Rule 5.4.9 transmission of the notice of electronic filing automatically generated by the system constitutes service on:

Jonathan B. Morrow
Stephen Killen
Knight Nicastro
4240 Duncan
St. Louis, Missouri 63110
jmorrow@knightnicastro.com
skillen@knightnicastro.com

                                                  */s/R. Todd Ehlert*
                                                  Attorney for Plaintiff