**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**ST. JOSEPH DIVISION**

| | | |
|---|---|---|
| B.P.S., LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 5:19-CV-06154-FJG |
| v. | ) | |
| | ) | |
| COVINGTON SPECIALTY INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | **JURY TRIAL DEMANDED** |
| | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO PARTIALLY EXCLUDE THE EXPERT OPINIONS OF LEWIS SCOTT GANN**

Lewis Scott Gann is a construction contractor who made repairs to the building that is the subject of this loss. Plaintiff has put forth Mr. Gann as an expert who will testify not only to the nature of the repairs he made and the cost for those repairs, but also as to the cause of the loss.[1] (Doc. 21). As Defendants established in the Motion and Memorandum (Docs. 41, 42), Mr. Gann's testimony regarding the cause of the loss fails to meet the standards of admissibility for expert testimony outlined in Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharm.*, 509 U.S. 5779 (1993), and its progeny. Plaintiff's Memorandum in Opposition ("Response," Doc. 44) does nothing to contradict this simple fact.

The Court's gatekeeper function under Rule 702 can be condensed into a three-part screening test: (1) is the expert qualified to offer the opinion, (2) is the opinion reliable, and (3) is the opinion relevant. *See Lauzon v. Senco Products, Inc.,* 270 F.3d 681, 686 (8th Cir. 2001). Plaintiff has the burden of showing that its expert's opinion is grounded in reliable facts and

[1] As mentioned in Defendant's Motion, Mr. Gann also has opinions regarding the scope and amount of repairs to the building, which are not at issue in this Motion.

knowledge and not mere subjective belief or unsupported speculation. *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010). Here, Plaintiff woefully fails to meet its burden to demonstrate that its expert, Mr. Gann, is qualified to offer an opinion as to the cause of the roof collapse at issue, nor that Mr. Gann's testimony is relevant or reliable because it does not meet Rule 702's standards.

## I. MR. GANN IS NOT QUALIFIED TO OPINE ON CAUSATION ISSUES

A central part of the court's gatekeeping role is ensuring that an expert's actual testimony does not exceed the scope of his expertise, which renders the testimony unreliable. *Prince v. Michelin N. Am., Inc.*, 248 F. Supp. 2d 900, 902 (W.D. Mo. 2003); *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001) (*citing Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 156, 143 L. Ed. 2d 238, 119 S. Ct. 1167 (1999)).

### A. Mr. Gann's Construction Experience Does Not Qualify Him to Give a Forensic Opinion on the Cause of This Loss.

In its Response, Plaintiff repeatedly argues that Mr. Gann is qualified to offer an opinion on causation due to his thirty-five-year career as the owner of a construction business. (*See* Doc. 44, p. 1, 4, 5, 7, 9). Plaintiff claims that Mr. Gann's causation opinion is "based on his technical and specialized knowledge" that "comes from having been a general contractor for the past thirty-five years." (*Id.*, p. 4). However, while a career in the construction field may provide Mr. Gann with the necessary technical knowledge and experience to build or repair the roof, it does not, as Plaintiff implies, *de facto* mean that Mr. Gann has the technical or specialized knowledge to determine the cause of a roof collapse, and Mr. Gann's testimony establishes that the issue of causation is outside the scope of his expertise as a general contractor.

Mr. Gann's own testimony establishes that his experience involves building and repair of damage, but not determination of the cause of the damage he repairs.

Q: And in your 35 years' experience, I mean, primarily what you do is go and figure out how much it's going to cost and what needs to be done to fix a problem, correct?
A: That's pretty much the upshot of general contracting.
Q: I would think that's fair. But that is your focus, though, correct?
A: Yeah.
…
Q: To be fair, sir, the way you built your business was that you fix the problems, correct, and you do a good job at it?
A: That's correct.
Q: Okay. Assessing the problem, what the cause was, that is not your profession?
…
Q: But that's not your profession, though, is it, sir?
A: My profession is a general contractor.

(Dep. of Gann, **Ex. B**,[2] 12:8-16, 24:5-18).

Moreover, Mr. Gann even admits that despite his construction experience, he does not have any specialized training in how to determine cause of roof damage.

Q: …As far as you said you do not have any specialized training to do this and that you are a lay person, and that is a fair statement, correct?
A: Yeah.

(*Id*., 24:21-25).

Plaintiff's contentions to the contrary fail to rebut this simple fact. Plaintiff relies on Mr. Gann's deposition testimony he specializes in structural framing and that he is an "expert in structural framing." (Doc. 44, pp. 4, 7). However, assuming Mr. Gann's self-asserted expert title is sufficient to qualify him as an expert, expertise in structural framing, like experience as a general contractor, does not establish that he is an expert in determining the cause of damage to a roof. On follow-up questioning during his deposition, Mr. Gann's testimony establishes that his structural framing experience is limited to construction and repair, and his focus is on figuring out what needs to be done to fix a problem and how much it will cost. (Ex. B, 12:8-16). Mr. Gann even

[2] References to Ex. B refer to the Deposition of Mr. Gann, attached to Doc. 42. Defendant refers back to this Exhibit rather than duplicating to avoid confusion. Subsequent exhibits attached hereto will follow this numbering system.

admits that he does not deal with roof collapses other than when an excavator is used to destroy the roof.

> Q: Specifically, have you done the collapse of anything due to just rotting?
> A: No, not to rotting. No, the only roof collapses we ever do is when we take an excavator and we punch it in. It's easy to tell what the cause was.

(*Id*., 40:7-12).

Similarly, citing Mr. Gann's deposition testimony, Plaintiff claims Mr. Gann has been "evaluating wind-related structural damage his 'whole career.'" (Doc. 44, pp. 4, 7). Yet, this characterization of Mr. Gann's testimony is incorrect. In the portion of testimony Plaintiff cites, Mr. Gann is asked whether he has "been asked to examine wind-related damage before." (Ex. B, 20:5-6). Mr. Gann, in fact, does not testify that he has "evaluated wind-related damage," only that he has been asked by customers to examine damage caused by wind. (*Id*., 20:9-11). Examining damages to a structure following wind or a storm is not equivalent to evaluating the cause of damage and concluding it was the result of wind. Notably, Mr. Gann's testimony implies that the cause of the damage was already determined to be wind and he was not providing any evaluation as to whether the damage was caused by wind. Moreover, the only instance in which he has given an opinion that something was related to wind damage occurred following a tornado – a case where the cause of the damage was a foregone conclusion that a lay person could easily determine. (*Id*., 20:23 – 21:9).

Mr. Gann's background is insufficient to qualify as an expert in causation.

**B. Determination of The Cause of This Loss Requires Expert Engineering Knowledge.**

Plaintiff attempts to dismiss Mr. Gann's lack of qualifications by diminishing the need for Mr. Gann to have "scientific knowledge" and arguing that his opinion should not be judged "through a scientific lens." (Doc. 44, pp. 8-9). However, given the facts and circumstances of this

case, an expert engineering opinion based on scientific knowledge and investigation is required to reliably determine the cause of the damage.

While Plaintiff may be correct that "scientific knowledge" is not necessarily required depending on the topic of the expert opinion, Plaintiff is incorrect that the cause of the roof collapse does not require "scientific" knowledge. In attempting to explain the mechanics of wind damage, Mr. Gann himself admits that it's all about "the physics of it." (*Id.*, p.4; Ex. B, 41:1-4). Physics is a science. Understanding and applying physics requires "scientific" knowledge and Plaintiff's argument that no scientific knowledge necessarily goes against its own expert's testimony.

As further support of its position against the need for "scientific" knowledge, Plaintiff points to the testimony of Defendants corporate representative and insurance adjuster as support that an engineer is not necessary to determine the cause of loss. Plaintiff cites testimony from both of these people that neither of them believe that an engineer is necessary in every case of roof damage. (*See* Doc. 44, pp. 7-8). Whether or not an expert engineer's opinion is necessary in every case is not the issue; the issue is whether this case requires an engineer's opinion on causation. And both witnesses Plaintiff points to actually testified that this case required an engineer's opinion. (Dep. of Dan Durbin, **Ex. C**, 44:25 – 46:7; Dep. of Broc Beaver, **Ex. D**, 61:18 – 62:1, 70:16-25). In addition, Plaintiff's engineering expert does, in fact, testify that it would take an expert engineer to determine how the roof failed in this case. (Dep. of Michael Falbe, **Ex. E**, 21:23 – 22:7).

Plaintiff admits that engineering testimony is scientific (Doc. 44, p. 6). Mr. Gann admits that he is not an engineer and does not have education or qualifications of an engineer. (Ex. B, 23:15 – 24:4). Mr. Gann, thus, does not have the requisite qualifications for offering a causation opinion.

Notably, Plaintiff even retained an expert engineer to provide an opinion as to the cause of the roof loss at issue here. (Doc. 21-1). Plaintiff cannot claim that Mr. Gann does not need an engineering degree to determine the cause of the roof damage while simultaneously relying upon an engineer to determine the cause of the roof damage at issue.

Even if the court were to accept that "scientific" knowledge on causation is not necessary, and "technical" knowledge applies, Plaintiff's argument still fails. As outlined above, while Mr. Gann may have sufficient "technical" knowledge to testify regarding the repair of the building, his "technical" knowledge is not sufficient to qualify him to offer a forensic opinion as to the cause of the damage he later repaired.

Thus, while Defendant does not dispute that Mr. Gann is qualified to provide an opinion regarding repairability, he does not have the required technical or specialized knowledge or experience, and is therefore simply unqualified under Rule 702, to opine on the cause of the roof damage.

## II. <u>MR. GANN'S TESTIMONY IS NOT RELIABLE</u>

Defendant addressed the reliability issues of Mr. Gann's testimony at length in its Motion and Memorandum, and will not reargue those points here. Yet in its Response, Plaintiff again attempts to disregard Rule 702's emphasis on reliability of facts, principles, and methods underlying an expert opinion by rejecting the need for reliable, testable conclusions. Plaintiff characterizes this process as "scientific" and therefore unnecessary in certain cases where the subject matter is not "science." This argument ignores the language of and rationale behind Rule 702.

As discussed above, this is case involving "scientific" subject matter, but even if it were not, the process for reaching an expert conclusion, and especially one on causation, requires a

scientific approach – observation, hypothesis, testing, and evaluation. Non-scientific experts should receive the same degree of scrutiny regarding reliability as their scientific counterparts. Fed. R. Evid. 702 advisory committee's note; *Storie v. Duckett Truck Ctr., Inc.*, No. 4:06 CV 1238 DDN, 2007 U.S. Dist. LEXIS 92083, at *8-9 (E.D. Mo. Dec. 14, 2007). Rule 702 states that all expert testimony must be the product of reliable principles and methods. Fed. R. Evid. 702. Therefore, an expert must still explain how he arrived at his conclusions, and the trial court cannot simply take the expert's word for it. Fed. R. Evid. 702 advisory committee's note; *Storie*, 2007 U.S. Dist. LEXIS 92083, at *9. Thus, while an expert need not necessarily have scientific knowledge to be qualified to give an opinion on a topic, his opinion must still be the product of sufficient facts, and reliable and generally accepted methods and principles, Mr. Gann's testimony is not.

Mr. Gann's opinion that wind caused the roof collapse is based only on what he thinks or feels happened following a brief, and distanced, visual inspection. (Ex. B, 17:10-20, 19:15-23, 43:9-13, 46:17-22).

The only methodology Mr. Gann employed is to look at "what the problem is and what it's going to take for repair it." (*Id*., 12:17-24). His methodology addresses only two things: (1) identifying what is damage, and (2) figuring out how to fix it. His methodology makes no mention whatsoever about how he determines the cause of the damage.

Mr. Gann formed an opinion based on pure speculation without any underlying investigation or testing – scientific or otherwise. Without even getting onto the roof, he concluded the cause was wind damage based only on looking at the roof from the ground. (*Id*., 17:10-20). He admits he did no investigation into alternative causes of loss, and did not test whether his theory

as to causation was sound. (*Id.*, 18:1-3, 19:6-8, 28:20-22, 29:14-19, 30:7-11, 32:6-11, 34:24-25, 35:12-18, 36:11-13, 38:4-7, 40:22, 55:21 – 56:4).

Mr. Gann's "tongue-in-cheek" missile comments throughout his testimony, reflect what little attention he paid to determining the cause of the collapse. These comments, made in response to questions regarding other potential causes of loss, underscore the fact that Mr. Gann clearly did not even consider what the cause was, but made an assumption/speculation based on no reliable facts that the roof collapsed due to wind.

Mr. Gann even admitted that he did not question what happened to cause the damage (*Id.*, 17:4-9) and that the cause didn't really matter to him because he is only there to fix the damage:

> Q: Right. It makes no difference what the cause is; you were there to fix it?
> A: That's correct.

(*Id.*, 21:17-19; *see also*, *id.*, 18:9-15; 42:1-5).

Thus, Mr. Gann's causation testimony is not reliable, as required by Rule 702.

## III. MR. GANN'S TESTIMONY IS NOT RELEVANT

To be relevant, the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *Post v. Dolgencorp*, No. 4:19-cv-00171-JAR, 2020 U.S. Dist. LEXIS 109131, at *3 (E.D. Mo. June 22, 2020). In its Response, Plaintiff assumes that Mr. Gann's opinion is relevant because it will be useful in determining the issue of causation because "[o]rdinary lay jurors are unlikely to understand the mechanics of construction, framing, fasteners and the application of wind uplift to same. (Doc. 44, p. 5). However, the testimony Plaintiff cites in support of Mr. Gann's specialized knowledge on these issues indicates that he has no actual knowledge of how the mechanics of construction, framing, and fasteners were damaged by wind uplift that be believes caused the damage in this case.

Plaintiff cites testimony in which Mr. Gann discusses the "mechanics" of wind damage. (*Id.*, pp. 4-5). Mr. Gann testified as to how wind can theoretically cause damage by disjointing fasteners, removing support, and causing a domino effect leading to collapse. However, when asked, he is unable to apply these theoretical steps and explain how wind caused the damage in this specific case. (Ex. B, 40:23 – 44:4).

Moreover, Mr. Gann opines that the wind shifted the structural framing, but when asked to explain how that occurred here, Mr. Gann could only state that "wind shifts framing by pressure," and was completely unable to give any reliable opinion regarding what the wind put pressure on or how pressure was caused in this case.

> Q: How did the wind shift the framing? I guess that's just the bottom line. How did it happen?
> A: Well, wind shifts framing by pressure.
> Q: Pressure on what?
> A: Pressure on the side wall, pressure on the roof deck, uplift pressure, side to side. I mean, it can, I mean --
> Q: In this particular case, what happened?
> A: I wasn't there when it failed, so I can't tell you, but I'm going to say it's obviously, I felt like, the roof deck itself shifted.

(*Id.*, 46:9-22).

Mr. Gann's inability to apply whatever knowledge he may have to the specific facts of this case in order to explain how he concluded that wind caused the roof damage here does nothing to help the jury make a determination as to a cause of loss.

Moreover, because Mr. Gann came to his conclusion by simply looking at the roof while standing on the ground (*see id.*, 17:10-20), there is no reason to have him testify as an expert on causation. If a determination as to causation can be made simply by looking at the damage from this perspective, then the photos should be sufficient for the jury to determine the cause themselves. An expert is not needed where jurors can reach the same conclusion without the expert's assistance. *See State v. Yingst*, 651 S.W.2d 641, 644 (Mo. Ct. App. 1983), *citing* 29 Am.Jur.2d, Evidence, §

822, p. 911 ("Expertise is not required when testimony does not constitute an opinion but is a statement of effects that can be observed and related by a nonexpert."); *Waters v. Barbe*, 812 S.W.2d 753, 758 (Mo. Ct. App. W.D. 1991) ("A person who observes or participates in an event as a lay witness does not become an expert simply because they "collaterally bring a certain expertise into their testimony").

Finally, Mr. Gann's causation opinion is not necessary to assist the jury because it is duplicative of Plaintiff's engineering expert's opinion and such cumulative testimony lacks the probative value necessary to outweigh the risk of unfair prejudice. *See Shallow v. Follwell*, 554 S.W.3d 878, 885 (Mo. 2018) ("Excessive expert witnesses can create the risk the trier of fact will resolve differences in expert witness opinions by the number of experts called instead of giving due consideration to the quality and credibility of each expert opinion."); *Midwest Materials Co. v. Village Dev. Co.*, 806 S.W.2d 477, 495 (Mo. App. 1991) ("Evidence is prejudicial if it tends to lead the jury to decide the case on some basis other than the established propositions in the case.").

Therefore, Mr. Gann's causation opinion does not meet Rule 702's relevancy requirement.

## IV. CONCLUSION

Plaintiff bears the burden of establishing Mr. Gann's testimony meets the standards set forth under Rule 702. However, as discussed in Defendants Motion, Memorandum and Reply, Mr. Gann does not meet these requirements because he is not qualified to opine on the issue of causation, and his causation opinion is not reliable or relevant. Thus, Plaintiff fails to meet its burden and Mr. Gann's causation opinions should be stricken.

Respectfully submitted,

**KNIGHT NICASTRO MACKAY, LLC**

*/s/Jonathan B. Morrow*
Jonathan B. Morrow, #58661
jmorrow@knightnicastro.com
4240 Duncan Avenue
St. Louis, Missouri 63110
(314) 649-5234 Telephone
(816) 396-6233 Facsimile
***Attorney for Defendant***

**CERTIFICATE OF SERVICE**

A true and accurate copy of the foregoing was filed electronically with the Clerk of Court, to be served by operation of the Court's electronic filing system, this 21st day of August, 2020 to:

R. Todd Ehlert, #51853
700 S. Riverside Road, Ste. 200
St. Joseph, MO 64507
Tehlert@rousepc.com
*Attorneys for Plaintiff*

*/s/Jonathan B. Morrow*